# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. **04 - 20264** 'CR-ALTONAGA'

18 U.S.C. § 371
18 U.S.C. § 1347
18 U.S.C. § 1956
18 U.S.C. § 2
18 U.S.C. § 982

MAGISTRATE JUDGE
BANDSTRA

UNITED STATES OF AMERICA

vs.



LEONARDO JAVIER BOLANOS,
ROBERT PETER SAUVE,
ALEJANDRA VANESSA CARNARU,
JOSEPH SHANE ELLIOTT,
JORGE HUMBERTO FORCADA,
CLARK CARLTON MITCHELL,
JOSE JOAQUIN VEGA,
REBECA NEREYDA NUNEZ,
      and
ORLANDO AMIGO,

    Defendants.

_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

## The Clinics

1.      Bolanos Institute, Inc. (hereinafter "Bolanos Institute") was a medical clinic located at 1370 Washington Avenue, Suite 309, in Miami Beach, Florida, and was in business from in or around December 2001 to in or around July 2003, when the clinic closed.

2.      The Lefebvre Institute Corporation (hereinafter "Lefebvre Institute") was a medical clinic located at 411 Michigan Avenue, Suite B, Miami Beach, Florida, and was in business from in or around April 2002 to in or around July 2003, when the clinic closed.

3.      Both Bolanos Institute and Lefebvre Institute claimed to specialize in the treatment of patients diagnosed with Human Immunodeficiency Virus ("HIV").  HIV is a viral infection that attacks a patient's immune system.  Bolanos Institute and Lefebvre Institute purported to provide intravenous infusion treatments, *i.e.*, the insertion of a needle into a patient's vein, in order to administer multivitamins, Neupogen, and Procrit (also known as "Epogen").  Neupogen and Procrit are medications that can be used in select cases to treat HIV patients.

4.      Bolanos Institute and Lefebvre Institute submitted claims to the Medicare program, seeking reimbursements for the cost of infusion treatments of Neupogen and Procrit that were supposedly provided to patients.

5.      From in or around February 2002 to in or around June 2003, Bolanos Institute received approximately $3,723,373 in Medicare reimbursements based upon claims for alleged treatments of Neupogen and Procrit.

2

6.      From in or around August 2002 to in or around June 2003, Lefebvre Institute received approximately $1,672,326 in Medicare reimbursements based upon claims for alleged treatments of Neupogen and Procrit.

### The Medicare Program

7.      The Medicare Program ("Medicare") was a federal program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare are prescribed by statute and by federal regulations under the auspices of the United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services ("CMS"). Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

8.      Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

9.      Medicare Part B covered costs of certain medical services and medications provided and prescribed by physicians, clinics, and other health care providers. Medicare Part B was administered in Florida by First Coast Service Options ("FCSO"), a company that contracted with CMS to receive, adjudicate, process and pay Medicare Part B claims. Medicare Part B payments were made directly to the physician, clinic, or other provider of the medical services, rather than to the beneficiary.

10.     Physicians, clinics, and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider who had been issued a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required

to set forth, among other things, the beneficiary's name and Medicare identification number, the services that had been performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other health care provider who had ordered the services.

11.     For Medicare billing purposes, medical services and medications provided to beneficiaries were identified by a Current Procedural Terminology ("CPT") code. The CPT code for the medication Neupogen was J1440. The CPT code for the medication Procrit was Q0136.

12.     Medicare paid for a portion of the cost of medical services and medications that were medically necessary and ordered by licensed physicians or other qualified health care providers.

13.     For services purportedly rendered from in or around December 2001 through in or around April 2002, Bolanos Institute billed Medicare under provider numbers assigned to **JORGE HUMBERTO FORCADA**, 02389B and 02689Z, and utilized **FORCADA's** Unique Physician Identification Number ("UPIN"), D50608.

14.     For services purportedly rendered from in or around April 2002 through in or around July 2003, Bolanos Institute billed Medicare its assigned Medicare provider number, K3344.

15.     From services purportedly rendered from in or around April 2002 through in or around July 2003, Lefebvre Institute billed Medicare under its assigned Medicare provider number, K3532.

## The Defendants

16.     Defendant **LEONARDO JAVIER BOLANOS** owned and operated Bolanos Institute, overseeing and managing its important business and financial decisions until the clinic closed in or around July 2003.  **BOLANOS** also was the registered agent for Lefebvre Institute and had signature authority on its business bank account.

17.     Defendant **ROBERT PETER SAUVE** assisted in the operation of Bolanos Institute from in or around December 2001 until in or around July 2003.  **SAUVE** also owned and operated Lefebvre Institute beginning in or around April 2002 until the clinic closed in or around July 2003.

18.     Defendant **ALEJANDRA VANESSA CARNARU** was employed at Bolanos Institute from in or around December 2001 until in or around July 2003.  **CARNARU** also worked at Lefebvre Institute from in or around April 2002 until in or around July 2003.  **CARNARU** was the office manager and director at Bolanos Institute and handled the billing for Bolanos Institute and Lefebvre Institute.  In or around July 2002, **CARNARU** was appointed Executive Vice President of Bolanos Institute.  **CARNARU** signed Bolanos Institute's checks.

19.     Defendant **JOSEPH SHANE ELLIOTT** was employed as the office manager at Lefebvre Institute and performed clerical duties from in or around May 2002 until in or around July 2003.  During this period, **ELLIOTT** also worked at Bolanos Institute intermittently.

20.     Defendant **JORGE HUMBERTO FORCADA** was a medical doctor licensed to practice medicine in the State of Florida.  **FORCADA** was employed by Bolanos Institute and treated patients at the clinic from in or around December 2001 through in or around March 2003.  **FORCADA** was the Medical Director at Bolanos Institute from in or around February 2002 through

5

in or around March 2003 and at Lefebvre Institute from in or around March 2002 through in or around January 2003.

21.      Defendant **CLARK CARLTON MITCHELL** was a medical doctor licensed to practice medicine in the State of Florida. He was employed by Lefebvre Institute and treated patients at the clinic from in or around April 2002 until in or around July 2003. He worked at Bolanos Institute and treated patients at the clinic from in or around February 2003 until in or around July 2003. **MITCHELL** was the Medical Director at Bolanos Institute from in or around March 2003 through in or around July 2003.

22.      Defendant **JOSE JOAQUIN VEGA** was a medical doctor licensed to practice medicine in the State of Florida. **VEGA** was employed by Bolanos Institute and treated patients at the clinic from in or around September 2002 until in or around July 2003. He was also the Medical Director at Lefebvre Institute from in or around February 2003 through in or around July 2003.

23.      Defendant **REBECA NEREYDA NUNEZ** worked as a medical assistant at Bolanos Institute from in or around December 2002 until in or around July 2003. She was also employed as a medical assistant at Lefebvre Institute from in or around January 2003 until in or around July 2003.

24.      Defendant **ORLANDO AMIGO** worked as a medical assistant at Bolanos Institute from in or around January 2003 until in or around July 2003.

### COUNT 1
### (Health Care Fraud Conspiracy: 18 U.S.C. § 371)

1.      Paragraphs 1 through 24 of the General Allegations section are realleged and incorporated by reference as though fully set forth herein.

6

2.      From in or around December 2001, the exact date being unknown to the Grand Jury, and continuing through in or around July 2003, in Miami-Dade County, in the Southern District of Florida, the defendants,

**LEONARDO JAVIER BOLANOS,**
**ROBERT PETER SAUVE,**
**ALEJANDRA VANESSA CARNARU,**
**JOSEPH SHANE ELLIOTT,**
**JORGE HUMBERTO FORCADA,**
**CLARK CARLTON MITCHELL,**
**JOSE JOAQUIN VEGA,**
**REBECA NEREYDA NUNEZ**
**and**
**ORLANDO AMIGO,**

did knowingly and willfully combine, conspire, confederate, agree, and reach a tacit understanding with each other and with persons known and unknown to the Grand Jury:

(A)     to defraud the United States by impairing, impeding, obstructing, and defeating, through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of Medicare; and;

(B)     to commit an offense against the United States, that is, to violate Title 18, United States Code, Section 1347, by knowingly and willfully executing, and attempting to execute, a scheme and artifice to defraud and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, a health care benefit  program as defined in Title 18, United States Code, Section 24(b), that is, Medicare, in connection with the delivery of and payment for health care benefits, items, and services.

7

## PURPOSE AND OBJECT OF THE CONSPIRACY

3.      It was the purpose and object of the conspiracy for the defendants to unlawfully enrich themselves by: (a) submitting false and fraudulent claims to Medicare; (b) paying kickbacks and bribes to Medicare beneficiaries so that the beneficiaries would serve as patients at the Bolanos Institute and Lefebvre Institute, thereby furthering the billing fraud scheme; (c) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer of fraud proceeds, and the payment of kickbacks and bribes; and (d) diverting fraud proceeds for the defendants' personal use and benefit.

## MANNER AND MEANS USED TO ACCOMPLISH THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose and object of the conspiracy included, but were not limited to, the following:

4.      **LEONARDO JAVIER BOLANOS** and **ROBERT PETER SAUVE** established Bolanos Institute and Lefebvre Institute.

5.      **LEONARDO JAVIER BOLANOS** and **ROBERT PETER SAUVE** directed medical assistants at the Bolanos Institute and Lefebvre Institute to provide infusion therapy treatments of vitamins and diluted medications, or treatments simply of vitamins, to patients who were, in fact, HIV positive.

6.      **LEONARDO JAVIER BOLANOS** and **ROBERT PETER SAUVE** directed medical assistants to falsely state on "Infusion Therapy" sheets that the medical assistants had provided patients with infusion therapy treatments containing specific dosages of medications.

7.      **REBECA NEREYDA NUNEZ** and **ORLANDO AMIGO**, among others, fabricated therapy notes and related documents that stated that patients had received infusion treatments and

8

specific dosages of medications, when, in fact, the patients had not received the treatments and medications indicated on the therapy notes and related documents.

8.    In order to conceal the fact that patients were not receiving the treatments and medications that were described in patient files, **JORGE HUMBERTO FORCADA, CLARK CARLTON MITCHELL,** and **JOSE JOAQUIN VEGA** falsified patient medical diagnoses in progress notes and related medical documentation, which were placed in such files.

9.    **LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE,** and **ALEJANDRA VANESSA CARNARU** submitted, or caused to be submitted, to Medicare numerous false and fraudulent claims on behalf of Bolanos Institute and Lefebvre Institute, seeking reimbursement for the cost of infusion treatments and medications, including Neupogen and Procrit, that were not provided, not provided as claimed, or were not medically necessary.

10.   To promote and continue the fraud scheme, **LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE,** and **JOSEPH SHANE ELLIOTT** paid kickbacks and bribes to Medicare beneficiaries to ensure that the beneficiaries would serve as patients at the Bolanos Institute and Lefebvre Institute.

**OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY**

In furtherance of the conspiracy, and to accomplish its object, at least one of the co-conspirators committed or caused to be committed, in the Southern District of Florida, at least one of the following overt acts, among others:

**Medicare Beneficiary J.C.**

1.    On or about February 26, 2002, **LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE,** and **ALEJANDRA VANESSA CARNARU** submitted or caused to be submitted

9

a false claim to Medicare, on behalf of Bolanos Institute, seeking reimbursement for the cost of Neupogen that supposedly had been provided to Medicare beneficiary J.C. on or about February 22, 2002.

**Medicare Beneficiary V.M.**

2.      On or about September 12, 2002, **CLARK CARLTON MITCHELL** signed progress notes indicating that he had examined Medicare beneficiary V.M.

3.      On or about September 13, 2002, **LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE,** and **ALEJANDRA VANESSA CARNARU** submitted or caused to be submitted a false claim to Medicare, on behalf of Lefebvre Institute, seeking reimbursement for the cost of Neupogen that had supposedly been provided to Medicare beneficiary V.M. on or about September 12, 2002.

4.      On or about June 30, 2003, **LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE,** and **ALEJANDRA VANESSA CARNARU** submitted or caused to be submitted a false claim to Medicare, on behalf of Lefebvre Institute, seeking reimbursement for the cost of Neupogen that had supposedly been provided to Medicare beneficiary V.M. on or about June 21, 2003.

**Medicare Beneficiary S.C.**

5.      On or about June 25, 2003, **ORLANDO AMIGO** prepared an Infusion Therapy sheet that falsely stated that Medicare beneficiary S.C. had received 600 micrograms of Neupogen.

6.      On or about June 30, 2003, **LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE,** and **ALEJANDRA VANESSA CARNARU** submitted or caused to be submitted a false

claim to Medicare, on behalf of Bolanos Institute, seeking reimbursement for the cost of Neupogen that supposedly had been provided to Medicare beneficiary S.C. on or about June 25, 2003.

**Medicare Beneficiary F.C.**

7.      On or about December 3, 2002, **JORGE HUMBERTO FORCADA** signed an Office Visit and Progress Note indicating that he had examined Medicare beneficiary F.C.

8.      On or about December 4, 2002, **JOSE JOAQUIN VEGA** signed a Follow Up Visit form that indicated that he had examined Medicare beneficiary F.C.

9.      On or about December 9, 2002, **REBECA NEREYDA NUNEZ** prepared an Infusion Therapy sheet that falsely stated that Medicare beneficiary F.C. had received 600 micrograms of Neupogen.

10.     On or about December 16, 2002, **LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE,** and **ALEJANDRA VANESSA CARNARU** submitted or caused to be submitted a false claim to Medicare, on behalf of Bolanos Institute, seeking reimbursement for the cost of Neupogen that supposedly had been provided to Medicare beneficiary F.C. on or about December 9, 2002.

11.     On or about February 24, 2003, **JORGE HUMBERTO FORCADA** signed a Subsequent Visit Note that falsely stated that Medicare beneficiary F.C. had Neutropenia.

12.     On or about May 9, 2003, **JOSE JOAQUIN VEGA** signed a Follow-Up Office Visit form that falsely indicated that Medicare beneficiary F.C. had Neutropenia.

13.     In or around May 2003, a co-conspirator paid a cash kickback to Medicare beneficiary F.C.

14.     On or about May 22, 2003, **LEONARDO JAVIER BOLANOS, ROBERT**

11

PETER SAUVE, and ALEJANDRA VANESSA CARNARU submitted or caused to be submitted a false claim to Medicare, on behalf of Bolanos Institute, seeking reimbursement for the cost of Neupogen that supposedly had been provided to Medicare beneficiary F.C. on or about May 14, 2003.

15.     On or about May 29, 2003, **LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE,** and **ALEJANDRA VANESSA CARNARU** submitted or caused to be submitted a false claim to Medicare, on behalf of Bolanos Institute, seeking reimbursement for the cost of Neupogen that supposedly had been provided to Medicare beneficiary F.C. on or about May 21, 2003.

**Medicare Beneficiary J.H.**

16.     On or about April 15, 2002, **JORGE H. FORCADA** signed a Subsequent Visits form that indicated that he had examined J.H. and that he had prescribed Neupogen.

17.     On or about May 20, 2002, **JORGE H. FORCADA** signed a Subsequent Visits form that indicated that he had examined J.H.

18.     On or about January 6, 2003, **REBECA NEREYDA NUNEZ** prepared an Infusion Therapy Sheet that falsely stated that Medicare beneficiary J.H. had received 600 micrograms of Neupogen and 10,000 units of Procrit.

19.     On or about March 5, 2003, **JOSE JOAQUIN VEGA** signed a Follow-Up Office Visit form that falsely stated that Medicare beneficiary J.H. had Neutropenia and Anemia.

20.     On or about May 7, 2003, **CLARK CARLTON MITCHELL** signed a Follow-Up Visit form that falsely indicated that Medicare beneficiary J.H had Anemia.

21.     On or about June 25, 2003, **CLARK CARLTON MITCHELL** initialed a Bolanos

Institute Infusion Therapy form that falsely indicated that Medicare beneficiary J.H. had received 600 micrograms of Neupogen and 10,000 units of Procrit.

22.      On or about June 30, 2003, **LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE,** and **ALEJANDRA VANESSA CARNARU** submitted or caused to be submitted a false claim to Medicare, on behalf of Bolanos Institute, seeking reimbursement for the cost of Procrit that was supposedly provided to Medicare beneficiary J.H. on or about June 25, 2003.

**Medicare Beneficiary E.R.**

23.      On or about February 22, 2002, **LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE,** and **ALEJANDRA VANESSA CARNARU** submitted or caused to be submitted false claims to Medicare, on behalf of Bolanos Institute, seeking reimbursement for the cost of Neupogen that was supposedly provided to Medicare beneficiary E.R. on or about December 24, 2001.

24.      On or about May 5, 2003, **ORLANDO AMIGO** prepared an Infusion Therapy sheet that falsely indicated that Medicare beneficiary E.R. had received 600 micrograms of Neupogen.

25.      On or about April 23, 2003, **JOSE JOAQUIN VEGA** signed a Follow-Up Visit form that falsely indicated that Medicare beneficiary E.R. had Neutropenia.

26.      On or about May 14, 2003, **LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE,** and **ALEJANDRA VANESSA CARNARU** submitted or caused to be submitted false claims to Medicare, on behalf of Bolanos Institute, seeking reimbursement for the cost of Neupogen that was supposedly provided to Medicare beneficiary E.R. on or about May 9, 2003.

13

**Medicare Beneficiary D.M.**

27.     On or about March 26, 2003, **CLARK CARLTON MITCHELL** signed a

Subsequent Visits form that falsely indicated that Medicare beneficiary D.M. had Neutropenia.

28.     On or about May 12, 2003, **ORLANDO AMIGO** prepared an Infusion Therapy

sheet that falsely stated that Medicare beneficiary D.M. had received 600 micrograms of Neupogen.

29.     On or about May 30, 2003, **LEONARDO JAVIER BOLANOS, ROBERT PETER**

**SAUVE,** and **ALEJANDRA VANESSA CARNARU** submitted or caused to be submitted a false

claim to Medicare, on behalf of Bolanos Institute, seeking reimbursement for the cost of Neupogen

that was supposedly provided to Medicare beneficiary D.M. on or about May 12, 2003.

**Medicare Beneficiary R.C.**

30.     On or about October 7, 2002, **JORGE HUMBERTO FORCADA** signed an Office

Visit and Progress Notes form that indicated that he had examined Medicare beneficiary R.C. and

that falsely stated that Medicare beneficiary R.C. had Neutropenia.

31.     On or about December 9, 2002, **REBECA NEREYDA NUNEZ** prepared an

Infusion Therapy sheet that falsely stated that Medicare beneficiary R.C. had received 600

micrograms of Neupogen and 10,000 units of Procrit.

32.     On or about March 29, 2003, **LEONARDO JAVIER BOLANOS, ROBERT**

**PETER SAUVE,** and **ALEJANDRA VANESSA CARNARU** submitted or caused to be submitted

a false claims to Medicare, on behalf of Lefebvre Institute, seeking reimbursement for the cost of

Neupogen that was supposedly provided to Medicare beneficiary R.C. on or about March 22, 2003.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2-29
### (Health Care Fraud: 18 U.S.C. §§ 1347 and 2)

1.      Paragraphs 1 through 24 of the General Allegations section are realleged and incorporated as though fully set forth herein.

2.      From in or around December 2001, and continuing through in or around July 2003, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants, as identified in Counts 2 through 30 below, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, that is: the defendants knowingly submitted, and caused to be submitted, to Medicare, through FCSO, the Medicare Part B carrier, false and fraudulent claims seeking reimbursement for the cost of infusions of Neupogen and Procrit.

### PURPOSE AND OBJECT OF THE SCHEME AND ARTIFICE

3.      It was the purpose and object of the scheme and artifice for the defendants to unlawfully enrich themselves by: (a) submitting false and fraudulent claims to Medicare; (b) paying kickbacks and bribes to Medicare beneficiaries so that the beneficiaries would serve as patients at Bolanos Institute and Lefebvre Institute, thereby furthering the billing fraud scheme; (c) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer of fraud proceeds, and the payment of kickbacks and bribes; and (d) diverting fraud proceeds for the defendants' personal use and benefit.

15

## MANNER AND MEANS OF THE SCHEME AND ARTIFICE

4.      The allegations in Paragraphs 4 through 10 of the Manner and Means section of Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein as a description of the manner and means of the scheme and artifice.

## ACTS IN EXECUTION OF THE SCHEME AND ARTIFICE TO DEFRAUD

On or about the dates set forth as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants, identified as to each count below, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud Medicare, a health care benefit program, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicare:

| Count | Patient/ Medicare Claim Number | Patient | Clinic | Date of Service | Date of Claim | Service Billed/ Amount of Claim |
|-------|-------------------------------|---------|--------|-----------------|---------------|--------------------------------|
| 2 | LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE, and ALEJANDRA VANESSA CARNARU | J.C. | Bolanos Institute | 02-22-02 | 02-26-02 | Neupogen (J1440) $400.00 |
| 3 | LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE, and ALEJANDRA VANESSA CARNARU | J.C. | Bolanos Institute | 08-07-02 | 08-13-02 | Neupogen (J1440) $400.00 |
| 4 | LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE, and ALEJANDRA VANESSA CARNARU | V.M. | Lefebvre Institute | 09-12-02 | 09-13-02 | Neupogen (J1440) $400.00 |

16

| Count | Patient/ Medicare Claim Number | Patient | Clinic | Date of Service | Date of Claim | Service Billed/ Amount of Claim |
|-------|-------------------------------|---------|--------|-----------------|---------------|--------------------------------|
| 5 | LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE, and ALEJANDRA VANESSA CARNARU | V.M. | Lefebvre Institute | 06-21-03 | 06-30-03 | Neupogen (J1440) $500.00 |
| 6 | LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE, ALEJANDRA VANESSA CARNARU, and JOSE JOAQUIN VEGA | S.C. | Bolanos Institute | 03-19-03 | 03-26-03 | Neupogen (J1440) $500.00 |
| 7 | LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE, ALEJANDRA VANESSA CARNARU, and ORLANDO AMIGO | S.C. | Bolanos Institute | 06-25-03 | 06-30-03 | Neupogen (J1440) $500.00 |
| 8 | LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE, ALEJANDRA VANESSA CARNARU, and REBECA NUNEZ | F.C. | Bolanos Institute | 12-9-02 | 12-16-02 | Neupogen (J1440) $400.00 |
| 9 | LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE, ALEJANDRA VANESSA CARNARU, JOSE JOAQUIN VEGA, and ORLANDO AMIGO | F.C. | Bolanos Institute | 05-14-03 | 05-22-03 | Neupogen (J1440) $500.00 |
| 10 | LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE, ALEJANDRA VANESSA CARNARU, JOSE JOAQUIN VEGA, and ORLANDO AMIGO | F.C. | Bolanos Institute | 05-21-03 | 05-29-03 | Neupogen (J1440) $500.00 |
| 11 | LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE, ALEJANDRA VANESSA CARNARU, and JORGE HUMBERTO FORCADA | J.H. | Bolanos Institute | 05-31-02 | 06-07-02 | Neupogen (J1440) $400.00 |

17

| Count | Patient/<br>Medicare<br>Claim Number | Patient | Clinic | Date of<br>Service | Date of<br>Claim | Service Billed/<br>Amount of Claim |
|---|---|---|---|---|---|---|
| 12 | LEONARDO JAVIER BOLANOS,<br>ROBERT PETER SAUVE,<br>ALEJANDRA VANESSA<br>CARNARU,<br>and<br>JORGE HUMBERTO FORCADA | J.H. | Bolanos<br>Institute | 05-31-02 | 06-07-02 | Procrit (Q0136)<br>$200.00 |
| 13 | LEONARDO JAVIER BOLANOS,<br>ROBERT PETER SAUVE,<br>ALEJANDRA VANESSA<br>CARNARU,<br>JOSE JOAQUIN VEGA,<br>and<br>REBECA NUNEZ | J.H. | Bolanos<br>Institute | 01-06-03 | 01-09-03 | Neupogen (J1440)<br>$400.00 |
| 14 | LEONARDO JAVIER BOLANOS,<br>ROBERT PETER SAUVE,<br>ALEJANDRA VANESSA<br>CARNARU,<br>JOSE JOAQUIN VEGA,<br>and<br>REBECA NUNEZ | J.H. | Bolanos<br>Institute | 01-06-03 | 01-09-03 | Procrit (Q0136)<br>$200.00 |
| 15 | LEONARDO JAVIER BOLANOS,<br>ROBERT PETER SAUVE,<br>ALEJANDRA VANESSA<br>CARNARU,<br>JOSE JOAQUIN VEGA,<br>and<br>ORLANDO AMIGO | J.H. | Bolanos<br>Institute | 03-17-03 | 03-26-03 | Neupogen (J1440)<br>$500.00 |
| 16 | LEONARDO JAVIER BOLANOS,<br>ROBERT PETER SAUVE,<br>ALEJANDRA VANESSA<br>CARNARU,<br>JOSE JOAQUIN VEGA,<br>and<br>ORLANDO AMIGO | J.H. | Bolanos<br>Institute | 03-17-03 | 03-26-03 | Procrit (Q0136)<br>$250.00 |
| 17 | LEONARDO JAVIER BOLANOS,<br>ROBERT PETER SAUVE,<br>ALEJANDRA VANESSA<br>CARNARU,<br>and<br>CLARK CARLTON MITCHELL | J.H. | Bolanos<br>Institute | 06-04-03 | 06-10-03 | Neupogen (J1440)<br>$500.00 |

18

| Count | Patient/ Medicare Claim Number | Patient | Clinic | Date of Service | Date of Claim | Service Billed/ Amount of Claim |
|-------|-------------------------------|---------|--------|-----------------|---------------|--------------------------------|
| 18 | LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE, ALEJANDRA VANESSA CARNARU, and CLARK CARLTON MITCHELL | J.H. | Bolanos Institute | 06-04-03 | 06-10-03 | Procrit (Q0136)) $250.00 |
| 19 | LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE, ALEJANDRA VANESSA CARNARU, CLARK CARLTON MITCHELL, and ORLANDO AMIGO | J.H. | Bolanos Institute | 06-25-03 | 06-30-03 | Neupogen (J1440) $500.00 |
| 20 | LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE, ALEJANDRA VANESSA CARNARU, CLARK CARLTON MITCHELL, and ORLANDO AMIGO | J.H. | Bolanos Institute | 06-25-03 | 06-30-03 | Procrit (Q0136) $250.00 |
| 21 | LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE, and ALEJANDRA VANESSA CARNARU | E.R. | Bolanos Institute | 12-24-01 | 02-22-02 | Neupogen (J1440) $400.00 |
| 22 | LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE, and ALEJANDRA VANESSA CARNARU | E.R. | Bolanos Institute | 12-24-01 | 02-22-02 | Procrit (Q0136) $200.00 |
| 23 | LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE, ALEJANDRA VANESSA CARNARU, JOSE JOAQUIN VEGA, and ORLANDO AMIGO | E.R. | Bolanos Institute | 05-05-03 | 05-12-03 | Neupogen (J1440) $500.00 |
| 24 | LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE, ALEJANDRA VANESSA CARNARU, and JOSE JOAQUIN VEGA, | E.R. | Bolanos Institute | 05-09-03 | 05-14-03 | Neupogen (J1440) $500.00 |

19

| Count | Patient/ Medicare Claim Number | Patient | Clinic | Date of Service | Date of Claim | Service Billed/ Amount of Claim |
|---|---|---|---|---|---|---|
| 25 | LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE, ALEJANDRA VANESSA CARNARU, CLARK CARLTON MITCHELL, and ORLANDO AMIGO | D.M. | Bolanos Institute | 05-12-03 | 05-30-03 | Neupogen (J1440) $500.00 |
| 26 | LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE, ALEJANDRA VANESSA CARNARU, and CLARK CARLTON MITCHELL | D.M. | Bolanos Institute | 06-25-03 | 06-30-03 | Neupogen (J1440) $500.00 |
| 27 | LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE, ALEJANDRA VANESSA CARNARU, JOSE JOAQUIN VEGA, JORGE HUMBERTO FORCADA, and REBECA NEREYDA NUNEZ | R.C. | Bolanos Institute | 12-09-02 | 12-16-02 | Neupogen (J1440) $400.00 |
| 28 | LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE, ALEJANDRA VANESSA CARNARU, JOSE JOAQUIN VEGA, JORGE HUMBERTO FORCADA, and REBECA NEREYDA NUNEZ | R.C. | Bolanos Institute | 12-09-02 | 12-16-02 | Procrit (Q0136)) $200.00 |
| 29 | LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE, and ALEJANDRA VANESSA CARNARU | R.C. | Lefebvre Institute | 03-22-03 | 03-29-03 | Neupogen (J1440) $500.00 |
| 30 | LEONARDO JAVIER BOLANOS, ROBERT PETER SAUVE, and ALEJANDRA VANESSA CARNARU | R.C. | Lefebvre Institute | 05-10-03 | 06-10-03 | Neupogen (J1440) $500.00 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

20

## COUNT 31
### (Money Laundering Conspiracy:  18 U.S.C. § 1956(h))

1.      Paragraphs 1 through 18 of the General Allegations section are realleged and incorporated by reference as though fully set forth herein.

2.      From in or around March 2002, and continuing through in or around June 2003, in Miami-Dade County, in the Southern District of Florida, the defendants,

**LEONARDO JAVIER BOLANOS,**
**ROBERT PETER SAUVE,**
**and**
**ALEJANDRA VANESSA CARNARU,**

did knowingly combine, conspire, confederate, agree with each other and with persons known and unknown to the Grand Jury to commit offenses under Title 18, United States Code, Sections 1956 and 1957, that is:

(A)     to conduct and attempt to conduct financial transactions affecting interstate commerce, which financial transactions involved the proceeds of specified unlawful activity, that is, health care fraud, in violation of Title 18, United States Code, Section 1347, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and with the intent to promote the carrying on of such specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

(B)     to engage and attempt to engage in monetary transactions, affecting interstate and foreign commerce, involving criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, health care fraud, in violation of Title 18, United States Code, Section 1347, knowing that the property involved in the

monetary transaction was derived from some form of unlawful activity, in violation of Title 18, United States Code, Section 1957(a).

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE
### (18 U.S.C. § 982)

1.      The allegations contained in Counts 1-31 of this Indictment are realleged and incorporated by reference, as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants have an interest pursuant to the provisions of Title 18, United States Code, Sections 982(a)(1) and 982(a)(7).

2.      Pursuant to Title 18, United States Code, Section 982(a)(7), upon conviction of **LEONARDO JAVIER BOLANOS** and **ROBERT PETER SAUVE** for any of the offenses charged in Counts 1 through 30, the defendants shall forfeit to the United States all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

3.      Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of **LEONARDO JAVIER BOLANOS** and **ROBERT PETER SAUVE** for the offense charged in Count 31, the defendants shall forfeit to the United States all property, real and personal, involved in such offense, and any property traceable to such property.

4.      If the property described above as being subject to forfeiture, as a result of any act or omission of **LEONARDO JAVIER BOLANOS** and **ROBERT PETER SAUVE,**

        A.      cannot be located upon the exercise of due diligence;

        B.      has been transferred or sold to or deposited with a third person;

C.    has been placed beyond the jurisdiction of the Court;

D.    has been substantially diminished in value; or

E.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as made applicable through Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of **LEONARDO JAVIER BOLANOS** and **ROBERT PETER SAUVE** up to the value of the above forfeitable property.

All pursuant to Title 18, United States Code, Sections 982(a)(1) and (a)(7) and the procedures set forth at Title 21, United States Code, Section 853, as made applicable through Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

_Emma Morales_
FOREPERSON

_Marcos D. Nchot_
MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

_Barbara Martinez Wright_
BARBARA MARTINÉZ WRIGHT
ASSISTANT UNITED STATES ATTORNEY

23

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name:   **LEONARDO JAVIER BOLANOS**

Case #:

Count # :   1      Conspiracy to Defraud and to Commit Health Care Fraud

18 U.S.C. § 371

*Max.  Penalty:    5 Years' imprisonment

Counts# :   2 - 30   Health Care Fraud

18 U.S.C. § 1347

*Max. Penalty:    10 Years' imprisonment on each count

Count  # :   31     Money Laundering Conspiracy

18 U.S.C. § 1956(h)

*Max. Penalty:    20 Years' imprisonment

Count # :

*Max. Penalty:

Count # :

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**<u>PENALTY SHEET</u>**

Defendant's Name:    **ROBERT PETER SAUVE**

Case #:

Count # :    1        Conspiracy to Defraud and to Commit Health Care Fraud

18 U.S.C. § 371

*Max.  Penalty:    5 Years' imprisonment

Counts# :    2 - 30    Health Care Fraud

18 U.S.C. § 1347

*Max. Penalty:    10 Years' imprisonment on each count

Count  # :    31        Money Laundering Conspiracy

18 U.S.C. § 1956(h)

*Max. Penalty:    20 Years' imprisonment

Count # :

*Max. Penalty:

Count # :

*Max. Penalty:

**<u>*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.</u>**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## <u>PENALTY SHEET</u>

Defendant's Name:  __**ALEJANDRA VANESSA CARNARU**__

Case #:

Count # :   1       Conspiracy to Defraud and to Commit Health Care Fraud

_____    18 U.S.C. § 371

*Max.  Penalty:    5 Years' imprisonment

Counts# :   2 - 30    Health Care Fraud

_____    18 U.S.C. § 1347

*Max. Penalty:    10 Years' imprisonment on each count

Count  # :   31      Money Laundering Conspiracy

_____    18 U.S.C. § 1956(h)

*Max. Penalty:    20 Years' imprisonment

Count # :

*Max. Penalty:

Count  # :

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# <u>PENALTY SHEET</u>

Defendant's Name:   **JOSEPH SHANE ELLIOTT**

Case #:

Count # :    1    Conspiracy to Defraud and to Commit Health Care Fraud

18 USC §371

\*Max.  Penalty:    5 years' imprisonment

Counts# :


\*Max. Penalty:

Count  # :


\*Max. Penalty:

Counts # :


\*Max. Penalty:

Count  # :


\*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, <u>special assessments, parole terms, or forfeitures that may be applicable.</u>**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## <u>PENALTY SHEET</u>

Defendant's Name:   **JORGE HUMBERTO FORCADA**

Case #:

Count # :    1        Conspiracy to Defraud and to Commit Health Care Fraud

18 U.S.C. § 371

*Max.  Penalty:    5 Years' imprisonment

Counts# :   11-12, 27-28

Health Care Fraud

18 U.S.C. § 1347

*Max. Penalty:    10 Years' imprisonment on each count

Count  # :

*Max. Penalty:

Count  # :

*Max. Penalty:

Count  # :

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name:    **CLARK CARLTON MITCHELL**

Case #:

Count # :    1        Conspiracy Defraud and to Commit Health Care Fraud

18 U.S.C. § 371

*Max.  Penalty:    5 Years' imprisonment

Counts# :   17-20, 25-26

Health Care Fraud

18 U.S.C. § 1347

*Max. Penalty:    10 Years' imprisonment on each count

Count  # :

*Max. Penalty:

Count  # :

*Max. Penalty:

Count  # :

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name:    **JOSE JOAQUIN VEGA**

Case #:

Count # :    1    Conspiracy to Defraud and to Commit Health Care Fraud

18 U.S.C. § 371

*Max.  Penalty:    5 Years' imprisonment

Counts# :    6, 9-10, 13-16, 23-24, 27-28

Health Care Fraud

18 U.S.C. § 1347

*Max. Penalty:    10 Years' imprisonment on each count

Count  # :

*Max. Penalty:

Count  # :

*Max. Penalty:

Count  # :

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name:  **REBECA NEREYDA NUNEZ**

Case #:

Count # :  1      Conspiracy to Defraud and to Commit Health Care Fraud

18 U.S.C. § 371

*Max.  Penalty:    5 Years' imprisonment

Counts# :   8, 13-14, 27-28

Health Care Fraud

18 U.S.C. § 1347

*Max. Penalty:    10 Years' imprisonment on each count

Count  # :

*Max. Penalty:

Count  # :

*Max. Penalty:

Count  # :

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name:   **ORLANDO AMIGO**

Case #:

Count # :   1       Conspiracy to Defraud and to Commit Health Care Fraud

18 U.S.C. § 371

*Max.  Penalty:    5 Years' imprisonment

Counts# :   7, 9-10, 15-16, 19-20, 23, 25

Health Care Fraud

18 U.S.C. § 1347

*Max. Penalty:    10 Years' imprisonment on each count

Count  # :

*Max. Penalty:

Count  # :

*Max. Penalty:

Count  # :

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

LEONARDO JAVIER BOLANOS, ET, AL.,

Defendants.

_____/

CASE NO. _____

**CERTIFICATE OF TRIAL ATTORNEY***

**Superseding Case Information:**

**Court Division:** (Select One)

| | | |
|---|---|---|
| X | Miami | _____ Key West |
| _____ | FTL | _____ WPB _____ FTP |

New Defendant(s)        Yes _____    No _____
Number of New Defendants     _____
Total number of counts       _____

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:    (Yes or No)    __No__
    List language and/or dialect    _____

4.  This case will take    __20__    days for the parties to try.

5.  Please check appropriate category and type of offense listed below:
    (Check only one)                                    (Check only one)

| I | 0 to 5 days | _____ | Petty | _____ |
|---|---|---|---|---|
| II | 6 to 10 days | _____ | Minor | _____ |
| III | 11 to 20 days | X | Misdem. | _____ |
| IV | 21 to 60 days | _____ | Felony | X |
| V | 61 days and over | _____ | | |

6.  Has this case been previously filed in this District Court? (Yes or No)    __No__
If yes:
Judge: _____    Case No. _____
(Attach copy of dispositive order)
Has a complaint been filed in this matter?    (Yes or No)    __No__
If yes:
Magistrate Case No.    _____
Related Miscellaneous numbers:    _____
Defendant(s) in federal custody as of    _____
Defendant(s) in state custody as of    _____
Rule 20 from the    _____    District of    _____

Is this a potential death penalty case? (Yes or No)    __No__

7.  Does this case originate from a matter pending in the U.S. Attorney's Office prior to April 1, 2003?    __X__ Yes    _____ No

8.  Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999?    _____ Yes    __X__ No
If yes, was it pending in the Central Region?    _____ Yes    _____ No

9.  Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?    _____ Yes    __X__ No

10. Does this case originate from a matter pending in the Narcotics Section (Miami) prior to May 18, 2003?    _____ Yes    __X__ No

FILED by _____ D.C.
MAG. SEC.

**APR 2 9 2004**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

_____
BARBARA MARTINEZ WRIGHT
ASSISTANT UNITED STATES ATTORNEY
Court No. A5500536

*Penalty Sheet(s) attached

REV.1/14/04

INDICTMENT NO. 0303-ECS-0049

FORM DBD-34
March 04

No.

04-20264 CR-ALTONAGA

MAGISTRATE JUDGE
BANDSTRA

# UNITED STATES DISTRICT COURT

SOUTHERN ------ District of ------ FLORIDA

vs

THE UNITED STATES OF AMERICA

LEONARDO JAVIER BOLANOS,
ROBERT PETER SAUVE,
ALEJANDRA VANESSA CARNARU,
JOSEPH SHANE ELLIOT,
JORGE HUMBERTO FORCADA,
CLARK CARLTON MITCHELL,
JOSE JOAQUIN VEGA,
REBECA NEREYDA NUNEZ, and
ORLANDO AMIGO,

Defendants.

## INDICTMENT

18 U.S.C. 371
18 U.S.C. 1347
18 U.S.C. 1956
18 U.S.C. 2
18 U.S.C. 982

A true bill.

_Brenda Whralen_
                              Foreman

FGJ 03-02 (MIA)

Filed in open court this ----- 29th -----

of ----- April ----- A.D. 2004 ----- day,

----- Clerk

Bail, $ -----